**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

RAYBERT DARBY,

        Plaintiff,

vs.                                        Case No. 3:05-cv-199-J-32-MCR

S.B. BALLARD CONSTRUCTION
COMPANY,

        Defendant.

## **ORDER**

This employment case is before the Court on defendant S.B. Ballard Construction Company's ("Ballard's") motion to dismiss the complaint filed by plaintiff Raybert Darby ("Darby") for failure to state a claim and failure to exhaust administrative remedies.

For purposes of deciding the motion, the following allegations, taken from the complaint and the administrative agency charge referenced therein,[1] are assumed to be true and are viewed in the light most favorable to Darby. See

---

[1] In deciding a motion to dismiss, a court may examine the complaint and any matters referenced therein. See Brooks v. Blue Cross and Blue Shield of Florida, Inc., 116 F.3d 1364, 1369 (11th Cir.1997). Here, that includes the charge since Darby referenced it at paragraph two of the complaint. See Dubisar-Dewberry v. Folmar, 883 F.Supp. 648, 651 n.4 (M.D. Ala. 1995)(considering charge referenced in complaint without converting motion to dismiss to motion for summary judgment and citing cases that support doing so).

Christopher v. Harbury, 536 U.S. 403, 404 (2002)(discussing motion to dismiss standards).

Darby worked as a carpenter for Ballard from March 2002 until his termination in July 2002. Darby alleges that, during his brief employment, he was continuously harassed and treated differently because he is African American. Darby alleges that his direct supervisor repeatedly stated that "there is no such thing as a black carpenter" and that "there were no black carpenters 'in the olden days.'" (Doc. 1 at ¶ 6.) Darby alleges that, in an apparent effort to force him to quit, Ballard effectively demoted him by reducing his pay and requiring him to do work unrelated to carpentry and of a demeaning nature, such as cleaning the walls with a rag and shoveling mud. Darby alleges that after he complained of race discrimination to both his superintendent and the Mayor's office, Ballard terminated him and another African American carpenter under the guise that Ballard decided to use subcontractors to do their work. Darby alleges that he learned that Ballard never hired any subcontractors and instead hired white carpenters of equal or less experience than his to do the work.

After his termination, Darby dual-filed a charge with the Jacksonville Human Rights Association ("JHRC") and the Equal Employment Opportunity Commission ("EEOC"). On the charge, he checked the "retaliation" box but left other boxes blank, including the "race" and "other" boxes. In his statement of particulars, he

alleged:

    1.    I was terminated from my position as carpenter with my employer, S.B. Ballard Construction Company on July 17, 2002. I began employment with this company in March 2002.

    2.    I was told by Mr. Dale Polokonis, Site Superintendent that I was being terminated because the company had hired a sub-contractor to perform the work that was originally assigned to myself and certain other company employees.

    3.    I believe that I was terminated because of retaliation, in violation of Title XI, Chapter 402 of the Jacksonville Municipal Code and Title VII of the Civil Rights Act of 1964, as amended.

    4.    I feel this way because I initiated a complaint to Mr. Dale Polokonis, Superintendent and Mr. Steve Ballard, President & Owner of S.B. Ballard Construction Company and Mr. Gary Stafford of Barton Malow regarding racially charged conduct, language and activities present on the ball park construction site. Pursuant to my complaint it was noted that no actions were taken on the company's behalf to negate these disparate acts. On or about June 24, 2002 two members of the Jacksonville Ministers for Equity, Justice and Mercy visited the construction site and attempted to speak with head members of S.B. Ballard Construction Company and Barton Malow in an effort to mitigate the hostile work conditions present at the construction site. Days after the minister's visit I was terminated, allegedly due to the acquisition of a sub-contractor, who was to complete the work that myself and certain others were originally assigned. Adversely, the company never hired a sub-contractor to complete their phase of the project. In fact, the company continued to hire more carpenters and other persons internally on a regular basis.

(Doc. 6-2 at Ex. A.) After an investigation into the charge, Darby received a

"reasonable cause" determination in his favor and a notice of his right to sue.

Darby's complaint has three counts. Count I alleges race discrimination,

3

harassment, and retaliation in violation of 42 U.S.C. 1981 ("§ 1981").  Count II alleges race discrimination, harassment, and retaliation in violation of 42 U.S.C. 2000e ("Title VII").  Count III alleges race discrimination in violation of Fla. Stat. §§ 760.01, et seq. ("FCRA").

Under the liberal pleading standard of Fed.R.Civ.P. 8(a), a complaint need only set forth a short plain statement of the claim showing that the plaintiff is entitled to relief.  Swierkiewicz v. Sorema N.A., 534 U.S. 506, 512 (2002).  "Such a statement must simply give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." Id. (quotation omitted).  "A court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." Id. at 514 (quotation omitted).

Ballard first argues that Darby's race discrimination claim under § 1981, found in Count I, should be dismissed for a failure to state a claim because Darby does not specifically allege that Ballard acted with the requisite intent.[2]  To state a claim for discrimination under § 1981, a plaintiff must allege facts establishing that the defendant intended to discriminate on the basis of race and that the

---

[2]     Although Ballard asks the Court to dismiss Count I of the complaint in its entirety, Ballard does not present any argument as to why the part of Count I alleging retaliation in violation of § 1981 should be dismissed.  The Court will follow Ballard's lead and not address the § 1981 retaliation claim.

4

discrimination concerned one or more of the activities enumerated in the statute. Rustein v. Avis Rent-A-Car Sys., Inc., 211 F.3d 1228, 1235 (11th Cir. 2000).

The Eleventh Circuit recently addressed the issue of when dismissal of a § 1981 claim is appropriate. See Jackson v. BellSouth Telecomm., 372 F.3d 1250, 1270 (11th Cir. 2004). In Jackson, African American employees alleged that their employer discriminated against them in settling a prior lawsuit. Id. The Eleventh Circuit affirmed the district court's dismissal of the employees' § 1981 claim because they did not allege any facts that, if proven, would constitute intentional discrimination. Id. The Eleventh Circuit explained that the employees could have survived dismissal if they had provided "factually specific examples" that would have provided the employer with "fair notice of the factual grounds on which the complaint rests." Id. at 1272.

The complaint in this case is much different from the one dismissed in Jackson. Darby alleges generally that he was harassed and treated differently than employees who are not African American and that Ballard's conduct was "malicious and with a reckless disregard" for his rights. (Doc. 1 ¶ 15.) Darby provides specific examples of discrimination, including termination and replacement by employees who were not African American and had equal or less experience than Darby's. Unlike the allegations in Jackson, Darby's allegations are sufficient to allege intentional discrimination and give Ballard fair notice of the

factual grounds on which his complaint rests.

Ballard next argues that Darby's racial harassment claim under § 1981, also found in Count I, should be dismissed, asserting that "[c]omments and other conduct that negatively impact Darby's 'enjoyment of the contracting experience' [employment] do not support a claim under § 1981."  (Doc. 6-1 at p.6.)  According to Ballard, "[Darby] has not and cannot assert that any alleged harassment abrogated his right to contract."  (Id.)

A plaintiff can bring a harassment claim under § 1981 if the harassing conduct is sufficiently severe and pervasive so as to affect "the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship."  See Shields v. Fort James Corp., 305 F.3d 1280, 1282 (11th Cir. 2002)(citing 42 U.S.C. § 1981(b)); see also, Dandy v. United Parcel Serv., Inc., 388 F.3d 263, 271 (7th Cir. 2004); Dandy v. United Parcel Serv., Inc.  Felton v. Polles, 315 F.3d 470, 483 (5th Cir. 2002); Witt v. Roadway Exp., 136 F.3d 1424, 1432 (10th Cir. 1998).  Darby's complaint alleges generally that Ballard's "harassing behavior ... based on [p]laintiff's race ... was sufficiently severe and pervasive such that it affected the terms and conditions of [his] employment ... ."  (Doc. 1 ¶ 13.)  This, combined with specific examples of harassing behavior, is enough to withstand Ballard's motion to dismiss.

Finally, Ballard argues that this Court does not have subject matter

jurisdiction over Darby's discrimination and harassment claims under Title VII and the FCRA, found in Counts II and III respectively, because Darby failed to exhaust his administrative remedies by not specifically alleging discrimination and harassment in the charge that he dual filed with the JHRC and the EEOC.

Before filing a Title VII or FCRA lawsuit, a plaintiff first must exhaust his or her administrative remedies by filing a charge with an appropriate administrative agency and receiving a right to sue thereon. Green v. Elixir Indus., Inc., 407 F.3d 1163, 1167 (11th Cir. 2005)(Title VII); Woodham v. Blue Cross & Blue Shield of Fla., Inc., 829 So. 2d 891, 894 (Fla. 2002)(FCRA).  The exhaustion requirement serves the purposes of giving the employer notice of the alleged unlawful practices and allowing an agency the opportunity to conciliate before a lawsuit is filed. See Green, 407 F.3d at 1167.[3]

The Eleventh Circuit has held that a plaintiff exhausts his administrative remedies when the claims in his complaint are "like" or "reasonably related" to his charge allegations. See Coon v. Georgia Pacific Corp., 829 F.2d 1563, 1569 (11th

---

[3] Florida courts have held that decisions construing Title VII are applicable when considering claims under the FCRA since the FCRA was patterned after Title VII. Harper v. Blockbuster Enter. Corp., 139 F.3d 1385, 1387 (11th Cir. 1998) (citing Florida cases); see also Jackson-Levarity v. Department of Children & Families, No. 02-CA 27, 2003 WL 21704323, at *3 n.1 (Fla. Cir. Ct. March 7, 2003) (construing FCRA exhaustion requirements in conformity with Title VII exhaustion requirements).  The Court therefore will rely on Title VII cases in considering both the Title VII and the FCRA exhaustion arguments.

Cir. 1987); Equal Employment Opportunity Comm. v. Miss. College, 626 F.2d 477, 483 (5th Cir. 1980). The Eleventh Circuit has explained this standard as limiting a plaintiff's complaint to "the scope of the [agency] investigation which can reasonably be expected to grow out of the charge of discrimination." Mulhall v. Advance Sec., Inc., 19 F.3d 586, 589 n. 8 (11th Cir.1994). The Eleventh Circuit's latest opinions on exhaustion of administrative remedies reinforce its proclaimed "liberal" application of the standard, under which district courts should be "extremely reluctant" to allow procedural technicalities to bar employment claims. See Gregory v. Georgia Dept. of Human Resources, 355 F.3d 1277, 1280 (11th Cir. 2004)(quoting Sanchez v. Standard Brands, Inc., 431 F.2d 455, 460-61 (5th Cir. 1970)); Green, 407 F.3d at 1167 (quoting Gregory).[4]

Guided by Gregory and Green, the Court finds that Darby exhausted his administrative remedies with respect to his Title VII and FCRA discrimination and harassment claims. As in Green and Gregory, an agency's reasonable investigation into Darby's retaliation allegation necessarily would have uncovered the reasons why he complained (and thus the facts underlying his harassment and discrimination claims) and the reasons why he ultimately was terminated (and thus

---

[4]  The Eleventh Circuit decided Green on April 29, 2005, just eight days after Ballard filed its motion to dismiss. This Court discussed Green and Gregory in its August 26, 2005, Order in Sandra K. Pritchard v. Shands Jacksonville Medical Center, Inc., No. 3:04-cv-1229-J-32HTS (Doc. 38-1), a case likewise raising an exhaustion issue.

8

the facts underlying his discrimination claim). Indeed, Darby's statement of particulars pointed the agency in this direction by including the allegation that there was "racially charged conduct, language and activities present on the ball park construction site." (Doc. 6-2 at Ex. A.)[5] Certainly, Darby's claims of racial harassment and discrimination could reasonably grow out of such a charge allegation. As has been the case well before Green and Gregory, Darby's failure to check the "race" or "other" box does not change this result. See Sanchez v. Standard Brands, Inc., 431 F.2d 455, 463 (5th Cir. 1970)("[W]e decline to hold that the failure to place a check mark in the correct box is a fatal error. In the context of Title VII, no one - - not even the unschooled - - should be boxed out.").

For these reasons, it is hereby **ORDERED** that Defendant's Motion to Partially Dismiss Plaintiff's Complaint (Doc. 6-1) is **DENIED**. Ballard should file its answer to the complaint on or before **September 16, 2005**.

---

[5] Ballard attaches to its motion to dismiss, and makes much ado over, correspondence from the JHRC and EEOC to Ballard specifying that Darby filed a retaliation charge. Ballard alleges that the Court can consider this correspondence without converting the motion to dismiss into a motion for summary judgment since failure to exhaust administrative remedies raises an issue of subject matter jurisdiction. Even so, the Court finds the correspondence irrelevant since the appropriate inquiry in this case is the scope of an objectively reasonable investigation, not the scope of the actual investigation. See Gregory, 355 F.3d at 1280.

**DONE AND ORDERED** at Jacksonville, Florida on August 26, 2005.

TIMOTHY J. CORRIGAN
United States District Judge

k.
Copies to counsel of record